## THE NAUTIQUE.[1]

### THE RELIANCE.

#### JOSEPH EDWARD DREDGING CO. *v.* THE NAUTIQUE.

#### MISSISSIPPI & DOMINION S. S. CO. *v.* THE RELIANCE.

*(District Court, E. D. New York. December 26, 1890.)*

COLLISION—STEAM-VESSELS—CHANNEL-WAY—LOOKOUT.
  A dredge, employed in deepening the channel of New York bay, on arrival at her dredging ground found her pumps out of order. While repairing them, she made a circuit, and, returning, swung into the channel under the bows of the steam-ship N., which was going to sea. The dredge had no lookout, and the man at the wheel did not see the N. until she was upon him. The place where the collision occurred was buoyed as a place being dredged, and signals were flying on the dredge to show her character. At the time of the collision, an incoming steamer was passing the N., and the attention of the latter's officers was given to her. *Held*, that both vessels were in fault in keeping insufficient lookout.

In Admiralty. Cross-suits for damage by collision.
*Sullivan & Cromwell* and *Carpenter & Mosher*, for the Reliance.
*Butler, Stillman & Hubbard*, for the Nautique.

BENEDICT, J. These actions arise out of a collision that occurred in broad daylight in the lower bay of New York, near buoy No 10½, between the steam-ship Nautique and the dredging steamer Reliance, on

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

the 16th day of January, 1888. The Reliance was engaged in dredging out a cut on the east side of the main ship channel, and on the morning in question had proceeded to the cut, to begin work. Upon arrival there, she found her pumps out of order, and, while putting them in order, she made a circle around, with the object of coming back to her place in the cut as soon as the difficulty in the pumps was removed. Before she arrived back at her position, upon the completion of her turn, she was struck a glancing blow upon her starboard side by the steamer Nautique, then proceeding to sea, and at the time in the act of passing the steam-ship Umbria, which was coming up upon the western side of the channel.

The contention of the Reliance is that she made her circle within the boundaries of the channel, and within the portion marked off by buoys as the place where she was at work, and it was the duty of the Nautique to avoid her. The weight of the evidence upon this point, however, is that, in making her turn, the Reliance passed out of the channel to eastward a considerable distance, and then rounded to upon a starboard helm, to regain her position in the cut. She passed from the shoal-water to the east of the channel out into the channel, directly ahead of the Nautique, then engaged in passing the Umbria, where there was none too much room for that purpose. Considering the situation of the Umbria, the Nautique, and the Reliance, it was, in my opinion, a fault on the part of the Reliance to swing herself into the channel under the bows of the Nautique, as she did. The reason she did this undoubtedly was because she had no lookout. Her master was below, repairing the pumps, and the man at the wheel did not see the Nautique until she was upon him. I hold, therefore, the dredge guilty of fault conducing to the collision in omitting to keep a proper lookout. I also hold the Nautique in fault for omitting to keep a proper lookout. The place where she was navigating at the time of the collision was buoyed, as a place being dredged, and the Reliance had signals showing that she was a dredging-boat. Had proper lookout been kept on the Nautique, the Reliance would have been observed to be swinging into the channel in time to have avoided collision by slightly porting on the part of the Nautique, or by stopping a little sooner than she did. The reason she omitted these precautions was because her attention was directed to the Umbria, and she therefore omitted to watch, as she ought to have done, the movements of the Reliance. Both vessels being found guilty of fault, the damages will be apportioned.